# IN THE COURT OF APPEALS OF IOWA

No. 19-0015
Filed January 9, 2020

**HARRIS STEEL GROUP, INC. and AMERICAN ZURICH INSURANCE COMPANY,**
        Petitioners-Appellants,

**vs.**

**JUSTIN BOTKIN,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.


        An employer appeals following judicial review of a worker's compensation decision granting an application for alternate medical care. **AFFIRMED.**


        D. Brian Scieszinksi of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellants.

        Thomas J. Currie of Currie & Liabo Law Firm, P.L.C., Cedar Rapids, for appellee.


        Heard by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

An employer[1] appeals following judicial review of an agency decision granting an injured worker's application for alternate medical care. It contends the agency erred in granting the application because the worker refused to attend an independent medical examination to determine whether the requested treatment related to a compensable injury. Under the facts before us, we conclude that the agency properly granted Botkin's petition for alternate care.

**I. Background Facts and Proceedings.**

Justin Botkin was employed by Harris Steel Group, Inc. (Harris) when he injured his right shoulder at work in June 2015. Harris authorized Botkin to receive treatment from Dr. Tuvi Mendel, who performed surgery on Botkin's shoulder in November 2015. When Botkin returned for a follow-up appointment one year after surgery, he complained that his pain had increased slightly.

Because Botkin continued to have trouble with his right shoulder, he tried to schedule an appointment with Dr. Mendel late in 2017. Dr. Mendel told Botkin to get Harris's authorization for treatment because more than two years had passed since his injury. Harris scheduled Botkin for an independent medical examination to take place in December 2017, but Botkin refused to go. In turn, Harris failed to respond to Botkin's written requests to authorize additional treatment with Dr. Mendel.

In April 2018, Botkin submitted a claim for alternate medical care to the workers' compensation commissioner. The agency found that Dr. Mendel is the

---

[1] Although the employer's workers compensation insurer is also a party to the action, for the sake of simplicity, we will refer to both appellants by the employer's name.

only medical provider that Harris authorized to treat Botkin and thus Harris is not allowed to interfere with Dr. Mendel's treatment practices.  It also determined that Botkin's request for continued treatment with Dr. Mendel is reasonable and ordered Harris to authorize continued treatment.  Harris applied for rehearing, arguing that denial of the alternate medical care was warranted based on Botkin's refusal to submit to an independent medical examination.  The agency denied the application.  Harris raised the same argument in a petition for judicial review, which the district court denied.

## II. Scope and Standard of Review.

We review the district court's ruling on judicial review under the standards in the Iowa Administrative Procedure Act.  *See Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 199 (Iowa 2010).  Our review is limited to determining whether the district court correctly applied the law in exercising its review under Iowa Code section 17A.19(8) (2015).  *See Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 195 (Iowa 2007).  If we reach the same conclusions as the district court, we affirm; if not, we reverse or modify.  *See id.*

## III. Analysis.

Harris contends that the agency erred in granting Botkin's petition for alternate care.  It relies on Iowa Code section 85.39(1), which states that if an injured employee refuses to attend an independent medical examination, compensation is suspended for the period of refusal.[2]  In other words, Harris

---

[2] Although the section has been amended to provide that an employee who refuses to submit to the examination forfeits the right to compensation for the period of refusal, the amendment only applies to injuries occurring on or after July 1, 2017.

argues that Botkin has forfeited his right to medical care benefits until he attends the independent medical examination.

Botkin counters that the agency decision is correct because whether alternate medical care is reasonable is a separate issue from his refusal to attend the independent medical examination. Because the only issue before the agency was his request for alternate care and he showed it was reasonably suited to treat his injury, he argues the agency must be affirmed.

The two provisions of our workers' compensation statute discussed in this appeal "are separate and operate with different objectives." *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 843 (Iowa 2015). The first, set forth in Iowa Code section 85.27 (2018), "tasks the employer with the responsibility to provide medical and related health care to the injured worker" and "is focused on the treatment and rehabilitation following the injury." *Id.* This section generally authorizes an employer to select the care provider but provides a mechanism by which a dissatisfied employee can seek alternative care. *See id.*

The second provision, set forth in Iowa Code section 85.39, concerns examining injured employees. *See id.* Under this section, an injured worker must "submit to an examination by a physician selected by the employer at the employer's expense" to determine "the extent and character of the injury" for the purpose of compensation. *Id.* (quoting *Daugherty v. Scandia Coal Co.*, 219 N.W. 65, 67 (Iowa 1928)).

---

2017 Iowa Acts ch. 23, § 24. Before the legislature amended it, the supreme court interpreted the section to provide that benefits are suspended rather than forfeited if an employee refuses an independent medical examination. *See McCormick v. North Star Foods, Inc.*, 533 N.W.2d 196, 198 (Iowa 1995).

Harris argues that it needed an independent medical examination to determine whether Botkin's treatment is related to his work injury. Because a petition for alternate medical care is an expedited proceeding, Harris claims the agency must settle an employer's request for an independent medical examination at the same time as a petition for alternate medical care. If not, any employers contesting alternate medical care will be unable to obtain an independent medical examination before the alternate-care decision issues. Harris is concerned that by not requiring the agency to consider the issues together, we will prevent all employers who contest compensability from challenging a request for alternate medical care.

We conclude Harris's concerns are unwarranted. An alternate care claim is only meant for those situations in which compensability is uncontested. *See R.R. Donnelly & Sons v. Barnett*, 670 N.W.2d 190, 196 (Iowa 2003).

> [T]he issue of compensability is totally removed from the alternate medical care process. Instead, the commissioner's role under section 85.27 at this stage is limited to determining the reasonableness and necessity of medical care sought by an employee as an alternative to the care furnished by the employer. *Thus, if a compensability issue arises in the course of an alternate care dispute, the commissioner cannot order that the alternate care sought by the employee be furnished by the employer prior to a determination of the compensability of the injury in a contested case proceeding or some other proceeding.*

*Id.* at 196-97 (emphasis added). Compensability was not at issue here. Harris admitted Botkin sustained a work injury in June 2015. Although Harris questioned whether the care Botkin sought related to his work injury, it admitted at the hearing that it authorized Dr. Mendel to treat Botkin's work injury and never conveyed that it was no longer authorizing Dr. Mendel. As a result, Harris conceded that Botkin

"is entitled to continue care with Dr. Mendel regardless of any proceeding today as long as Dr. Mendel indicates it's related to the work injury."

Once an employer chooses an injured employee's care, "the employer shall hold the employee harmless for the cost of care *until the employer notifies the employee that the employer is no longer authorizing all or any part of the care and the reason for the change in authorization*." Iowa Code § 25.27(4) (emphasis added). Because Harris never told Botkin that it was no longer authorizing care with Dr. Mendel, it must hold Botkin harmless for the cost of any treatment with Dr. Mendel that relates to the June 2015 injury.[3] If a question arises about whether the treatment relates to the work injury, Harris may begin a contested case proceeding to determine compensability.

Under the facts before us, we agree that the agency properly granted Botkin's petition for alternate care. We affirm.

**AFFIRMED.**

---

[3] Although Botkin claims he could not make an appointment to receive treatment from Dr. Mendel until Harris confirmed he was authorized to continue treatment, our supreme court has rejected the notion that section 85.27(4) requires employees to make sure care authorizations are still in force before seeking more care. *See Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 776 (Iowa 2016) ("[N]othing in the language of section 85.27(4) suggests employees have a duty to investigate or a duty to inquire as to whether an authorization remains in effect before seeking care. To conclude the statute imposes such a duty on employees when the language of the statute clearly imposes a duty on employers would be inconsistent with our longstanding practice of construing chapter 85 liberally in favor of employees."). If an employer fails to give notice that care is no longer authorized, it must provide the cost of an injured employee's care from the authorized provider unless it proves the care "was unrelated to the medical condition or conditions upon which the employee's claim for workers' compensation benefits is based or that the employer no longer authorized the care the employee received at the time the employee received it." *Id.* at 778-79 (setting out seven facts and circumstances the agency must consider to determine whether this burden is met).